UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| STANCORP MORTGAGE INVESTORS, LLC, | Case No.: 1:26-cv-313 |
| Plaintiff, | |
| v. | |
| CUSHMAN & WAKEFIELD OF MARYLAND, LLC, CUSHMAN & WAKEFIELD OF WASHINGTON D.C., INC., CUSHMAN & WAKEFIELD OF VIRGINIA, LLC, CUSHMAN & WAKEFIELD, INC. and DAVID MASTERS, | |
| Defendants. | |

## COMPLAINT

Plaintiff, StanCorp Mortgage Investors, LLC ("SMI"), by and through its undersigned counsel, as and for its complaint against Cushman & Wakefield of Maryland, LLC ("Cushman Maryland"), Cushman & Wakefield of Washington D.C., Inc. ("Cushman D.C."), Cushman & Wakefield of Virginia, LLC ("Cushman Virginia"), Cushman & Wakefield, Inc. ("Cushman & Wakefield") (Cushman Maryland, Cushman D.C., Cushman Virginia and Cushman & Wakefield together, "Cushman") and David Masters ("Masters") (Masters and Cushman together, "Defendants"), and in support alleges:

### Nature of the Action

1. This case arises out of a series of grossly negligent and misleading appraisals provided by Defendants to SMI in order to induce SMI to originate twenty-seven (27) separate loans to LLCs (the "LLCs") controlled by Brandon Chasen ("Chasen") and Paul Davis ("Davis"),

1

secured by multi-family properties and at least one commercial building in Maryland and Virginia. At issue in this litigation are twenty-five (25) loans (the "Loans") originated to the LLCs and personally guaranteed by Chasen and Davis that were secured by properties in Maryland and Virginia (the "Properties"). The Properties were appraised (the "Appraisals") by Cushman Maryland, Cushman D.C. and Cushman Virginia primarily through their employee, Masters.

2. Cushman markets itself on its website as a "global real estate services leader" that "will never settle for the world that's being built," but instead, will relentlessly "drive it forward for [its] clients, colleagues and communities." In particular, its Valuation & Advisory practice states it provides clients "with accurate, reliable valuations that guide intelligent debt and equity decisions in real time." Moreover, the V&A practice touts its expertise and technical knowledge to offer valuations and advisory based on "constantly updated market data."

3. The Defendants greatly inflated the value of the Properties by, among other things, misrepresenting the physical characteristics and quality of the Properties and using in their calculation of value the Properties' inflated rent rolls and occupancy rates to make the current and prospective rental income from the Properties appear much higher than it actually was or could become.

4. Defendants misled SMI by misrepresenting that millions of dollars of renovations had been completed, describing minor cosmetic repairs as major rehab projects, falsely describing small work cubicles as full apartments, falsely representing studios as one bedrooms, and using inflated rent rolls and occupancy rates that were out of all proportion to the truth.

5. Masters prepared the Appraisals for twenty (20) of the Properties. The Loans and details of each Appraisal are set forth in the chart attached hereto as ***Exhibit A***.

6. After the borrowers began defaulting on the Loans in mid-2024, SMI undertook steps to mitigate its losses, including retaining other appraisal firms to appraise the subject Properties of the defaulted Loans in late 2024 and early 2025. SMI also undertook an investigation into what transpired with the defaulted Loans. The investigation and new appraisals brought to light, *inter alia*, the fraudulent rent rolls and occupancy rates and an accurate account of property renovations. It became clear that Defendants did not independently verify the information provided to them by third-parties. As a result of Defendants' actions, SMI has incurred significant losses on the Loans.

## The Parties

7. Plaintiff SMI is an Oregon limited liability company with its principal place of business in Hillsboro, Oregon. SMI's sole member is StanCorp Financial Group, Inc., a corporation organized and existing under the laws of the state of Oregon with its principal place of business in Portland, Oregon.

8. Defendant Cushman Maryland is a Maryland limited liability company with its principal place of business in Baltimore, Maryland. Upon information and belief, none of Cushman Maryland's direct or indirect members is a citizen of Oregon.

9. Defendant Cushman D.C. is a corporation organized and existing under the laws of Washington, D.C. with its principal place of business in Washington, D.C.

10. Defendant Cushman Virginia is a Virginia limited liability company with its principal place of business in Virginia. Upon information and belief, none of Cushman Virginia's direct or indirect members is a citizen of Oregon.

11. Defendant Cushman & Wakefield is a corporation organized and existing under the laws of the state of New York with its principal place of business in New York.

12. Defendant Masters is an individual residing in the State of Maryland. Masters is a state certified and licensed real estate appraiser employed by Cushman at all relevant times.

## Jurisdiction and Venue

13. This Court has jurisdiction under 28 U.S.C. § 1332 because the Parties' citizenship is completely diverse and the amount in controversy exceeds $75,000.

14. Venue is proper in this federal district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## Factual Background

### A. The Contracts and Defendants' Certifications

15. In or around 2018, Chasen and Davis sought to refinance the existing loans on the Properties which resulted in the origination of the Loans.

16. From 2018 to 2024, SMI engaged Defendants to provide credible appraisals of the Properties.

17. For each Property, Defendants and SMI entered into a valid agreement (the "Contracts") that created contractual duties on the part of Defendants.

18. The Contracts, as well as applicable state and federal law, required Defendants to comply with Uniform Standards of Professional Appraisal Practice of the Appraisal Foundation ("USPAP").

19. The Defendants' certifications attached to each Appraisal expressly provide, in relevant part:

   a. The statements of fact contained in this report are true and correct.

   b. The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are our personal, impartial, and unbiased professional analyses, opinions, and conclusions.

4

    c. We have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

    d. The reported analyses, opinions, and conclusions were developed, and this report has been prepared, with the requirements of the Code of Professional Ethics & Standards of Professional Practice of the Appraisal Institute, which include the USPAP.

    e. We made personal inspections of the Properties.

20. Defendants, by virtue of their specialized knowledge, possessed a legal obligation to conduct the Appraisals in observance of reasonable care.

21. Upon information and belief, Defendants prepared Appraisals that mispresented and inflated the value of the Properties in order to make the loan transactions appear less risky than they actually were, and caused SMI to lend far greater sums than an accurately appraised value of the Properties would have supported, thereby breaching their obligations under the Contracts.

22. Upon information and belief, Defendants knew or should have known at the time the Appraisals were completed that the Appraisals were grossly inaccurate, and further that they were being relied upon by SMI to approve and fund the Loans. Had the Appraisals been accurate, SMI would not have originated the Loans as it ultimately did or originated loans at a substantially lower original principal amount.

23. As a result of the foregoing, SMI has suffered damages. Defendants appraised the Properties at a much higher value than the actual value of the Properties, causing loans to be originated by SMI secured by Properties whose true value was substantially less than the misrepresented value in the Appraisals and could not support adequate recovery to SMI once the Loans defaulted, resulting in substantial losses to SMI.

**B. The Appraisals**

24. USPAP is incorporated by reference into the law in Maryland, Virginia, Oregon, Illinois and New York. *See* MD. Code. Ann. Business Occupations and Professions § 16-208 (b); COMAR 09.19.05.01; 18 VAC 130-20-180; OAR 161-025-0060; 225 ILCS 458/10-5; 19 NYCRR 1106.1.

25. The Appraisals provided and approved by Defendants certify that they comply with the USPAP standards as well as others such as Defendants' interpretation of SMI's guidelines, and Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), but the Appraisals fall far short of such compliance. Attached hereto as **Exhibit B** is the Appraisal for 817 St. Paul Street, Baltimore, Maryland (the "817 St. Paul Street Appraisal"). Each of the Appraisals contains a substantially similar, or identical, representation.

26. Examples of Defendants' omissions and failures to follow USPAP, thereby rendering their certifications untrue, include, without limitation, the following:

   a. USPAP Rule 1-2 requires an appraiser to identify the characteristics of the property from reasonably reliable sources such as a property inspection, legal description, photographs relevant to the type and definition of values and intended use of the appraisal.

   By reporting that the Properties were in good condition and that they had undergone millions of dollars in renovations when a basic property inspection made it obvious that the condition of the Properties was profoundly unsatisfactory and major renovations, if any, were not performed, the Appraisals violated Rule 1-2. It was clearly inappropriate and in violation of USPAP to represent in several of the Appraisals that "the quantity and quality of the data for the Income Capitalization Reports is considered very good to excellent or good."

   b. USPAP Rule 1-4 requires that based on the type of valuation method used, the appraiser must collect, verify, and analyze all information necessary for credible assignment results. The fraudulent rent rolls caused an overvaluation of the Properties as the income capitalization approach used to determine value relied exclusively on the rent rolls provided by the borrowers with no independent verification or analysis.

   c. USPAP Rule 1-2(f) permits the use of extraordinary assumptions if an appraiser has a reasonable basis for such an assumption. The extraordinary assumptions made by

6

the Defendants violated Rule 1-2(f) in that they unreasonably assumed that the renovations would be completed by a specified date. Not only was the date unrealistic under the circumstances but even if the renovations were completed there was no possibility that the rents promised by the rent rolls would be generated by such date.

d. Defendants claim to have performed a personal inspection of the property. However, upon information and belief, Defendants visited only a small number of units, ignored visible issues regarding the Properties visited, submitted inaccurate photographs, and overlooked incomplete renovations. A personal inspection performed in accordance with USPAP, which requires an "in person observation of the subject property," would have clearly shown that (i) the millions of dollars in renovation reported in the Appraisals were no more than superficial cosmetic repairs and (ii) the rent stated in the rent rolls for many of the Properties were not realistic and should not have been used in the calculation of value.

e. USPAP Rule 1-6 requires an appraiser to reconcile the quality and quantity of data available and analyzed within the approaches used. Defendants violated Rule 1-6 by using as comparable data, the data from other properties managed by Chasen without further analysis, as well as properties that were in significantly better condition than the Properties.

27. In the 817 St. Paul Street Appraisal, Defendants accepted as true the borrower's representations that: (i) the Property included a mix of one, two and three bedroom units when 61 of those units were actually studio apartments (Ex. B at 4); (ii) rents ranged from $1,975 to $3,400 per unit, well above the average asking rent of $1,502 per unit in the Baltimore region (*Id*. at 38, 77-78); and (iii) the Property had been "gut renovated" at a cost of $14,580,000, or $144,356 per unit, which is contradicted by photographs and a basic visual inspection of the Property. (*Id*. at 12-13, 58).

28. In sum, by their actions and omissions cumulatively considered, Defendants conducted the Appraisals in a grossly negligent manner and violated USPAP Rule 1-1 by committing substantial errors of omission and commission that significantly and adversely affected the Appraisals.

29.     Defendants accepted uncritically Chasen's false representations that millions of dollars in renovations had been made, when a competent personal inspection would have disclosed that either no renovations had occurred or what renovations had been done, nothing more than cheap, superficial, cosmetic repairs had been performed.

### C. SMI's Damages

30.     In originating the Loans, SMI relied upon Defendants' representations and assurances regarding the quality of the collateral underlying the Loans, such as their representations and assurances that the Properties were in good condition and renovations had been made.

31.     But for the misrepresentations and omissions in the Appraisals, SMI would not have originated the Loans as it ultimately did, because those representations and omissions and the Appraisals themselves were material to its decision to originate the Loans.

32.     As a result of the foregoing, SMI has suffered damages. Defendants appraised the Properties at a much higher value than the actual value of the Properties, causing loans to be originated by SMI secured by Properties whose true value was substantially less than the misrepresented value in the Appraisals and could not support adequate recovery to SMI once the Loans defaulted, resulting in substantial losses to SMI.

33.     SMI has incurred substantial losses due to the poor quality of the collateral underlying the Loans. The poor quality is reflected in far diminished value of the Properties upon reappraisal by SMI.

### D. Contractual and Statutes of Limitations Do Not Bar SMI's Claims

### 1. Continuing Negligence/Continuing Violation

34. Defendants engaged in the conduct alleged herein on a continuing and ongoing basis from at least 2018 to mid-2024. The negligent/grossly negligent conduct did not occur just once, but rather occurred in a series of separate acts.

35. The same violation – inflating the Appraisals—was committed at the time of each Property appraisal.

36. Defendants' conduct was a fixed and continuing practice, and therefore a continuing violation.

**2. Negligent Concealment**

37. SMI had neither actual nor constructive knowledge of the facts constituting its claims for relief at the time of the Appraisals. SMI did not discover, and could not have discovered through the exercise of reasonable diligence, the existence of the wrongdoing alleged herein until after the Loans began to default and after an internal investigation was completed after the second appraisals were performed. Prior to that, Defendants' misrepresentations and omissions did not reveal facts that would put SMI on inquiry notice that the collateral value securing each of the Loans was grossly inflated.

38. Defendants' misrepresentations and omissions were and are, by their very nature, self-concealing, as they were set forth in seemingly routine Appraisals that contained the data upon which they were based, and there were disclaimers and assumptions in the appendices. SMI believed that Defendants were exercising reasonable care in conducting the Appraisals.

39. A reasonable person under the circumstances would not have begun an investigation of the accuracy of the Appraisals until well after the defaults. For nearly six years, the Loans performed as expected. Indeed, SMI discovered the wrongdoing well after the defaults, after an investigation that was triggered by the second appraisals.

## FIRST CAUSE OF ACTION
### (Negligence)

40. SMI restates and incorporates by reference the preceding paragraphs as though fully stated herein.

41. Defendants provided the Appraisals upon which this action is based and upon which the Loans were originated.

42. Defendants had a duty to use reasonable care in conducting the Appraisals. This duty, among other things, required the Defendants to conduct the Appraisals in accordance with USPAP and other applicable regulations.

43. The actions of Defendants were negligent and breached this duty by:

   a. failing to provide appraisals and appraisal services that complied with USPAP and other applicable state and federal statutes and regulations;

   b. failing to provide appraisals and appraisal services that complied with standards applicable to the appraisal and appraisal industry; and

   c. failing to provide appraisals and appraisal services that were prepared by Defendants with the experience and competence necessary to complete the assignment.

44. Defendants' actions in failing to comply with industry standards and applicable regulations and Maryland and Virginia law constitutes negligence for which Defendants are liable to SMI.

45. As a direct and proximate result of such negligence, SMI has suffered damages. Defendants appraised the Properties at a much higher value than the actual value of the Properties, causing loans to be originated by SMI secured by Properties whose true value was substantially less than the misrepresented value in the Appraisals and could not support adequate recovery to SMI once the Loans defaulted, resulting in substantial losses to SMI.

## SECOND CAUSE OF ACTION

**(Gross Negligence)**

46. SMI restates and incorporates by reference the preceding paragraphs as though fully stated herein.

47. Defendants provided the Appraisals upon which this action is based and upon which the Loans were originated.

48. Defendants had a duty to use reasonable care in conducting the Appraisals of the Properties. This duty, among other things, required the Defendants to conduct the Appraisals in accordance with USPAP and other applicable regulations.

49. The actions of Defendants were negligent and breached this duty by:

    a. intentionally failing to provide appraisals and appraisal services that complied with USPAP and other applicable state and federal statutes and regulations;

    b. intentionally failing to provide appraisals and appraisal services that complied with standards applicable to the appraisal and appraisal industry; and

    c. intentionally failing to provide appraisals and appraisal services that were prepared by Defendants with the experience and competence necessary to complete the assignment.

50. Defendants' actions in failing to comply with industry standards and applicable regulations and Maryland and Virginia law, coupled with their actions to conceal this, constitutes gross negligence.

51. By their actions and omissions cumulatively considered, Defendants conducted the Appraisals in a grossly negligent manner and violated USPAP Rule 1-1 by committing substantial errors of omission and commission that significantly and adversely affected the Appraisals.

52. Within the scope of Defendants' undertaking—appraising the Properties—Defendants negligently made false representations of material fact regarding the value of the

Properties in violation of their legal duties with knowledge that the Appraisals would be relied upon by SMI.

53. SMI justifiably relied upon these false statements negligently made.

54. Upon information and belief, Defendants' actions were done knowingly and intentionally, with the expressed intent to provide false and misleading valuations on the Properties with knowledge of the potential consequences of such actions and actively concealing them.

55. As a direct and proximate result of Defendants' gross negligence, SMI has suffered damages. Defendants appraised the Properties at a much higher value than the actual value of the Properties, causing loans to be originated by SMI secured by Properties whose true value was substantially less than the misrepresented value in the Appraisals and could not support adequate recovery to SMI once the Loans defaulted, resulting in substantial losses to SMI.

### THIRD CAUSE OF ACTION
### (Professional Negligence)

56. SMI restates and incorporates by reference the preceding paragraphs as though fully stated herein.

57. Defendants performed and prepared the Appraisals and provided information to SMI in connection with the Loans. The Appraisals were performed, prepared, and submitted to SMI for the purpose of facilitating the Loans.

58. The Defendants' certifications attached to the Appraisals represent, among other things, that Defendants performed full inspections of the Properties and performed the Appraisals in accordance with USPAP.

59. In preparing the Appraisals, Defendants owed SMI a duty to act in accordance with the law and in accordance with custom, practices and standards of conduct prevailing in the industry.

60. Defendants breached their duty to SMI in negligently preparing Appraisals that contained numerous misrepresentations, failures and deficiencies, including, but not limited to: violations of USPAP, misrepresentations regarding material characteristics of the Properties and misrepresentations regarding the value of the Properties.

61. In preparing the Appraisals, Defendants committed one or more of the negligent acts and/or omissions:

   a. The personal inspection of the Properties was grossly negligent.

   b. The Appraisals reported millions of dollars in renovations to the Properties when personal inspections would have made it obvious that major renovations, if any, were not performed.

   c. The Appraisals should not have used the extraordinary assumptions they did because their use was inconsistent with USPAP Standard 1-2(f) since: (i) the extraordinary assumption was not required to properly develop credible opinions and conclusions; (ii) the Defendants did not have a reasonable basis for the extraordinary assumption; and (iii) the use of the extraordinary assumption did not result in a credible analysis.

   d. The extraordinary assumptions that renovations would be completed by a certain date were not reasonable, nor are the extraordinary assumptions that rent will commence per the owner's rent roll and timeframe.

   e. The fraudulent rent rolls received from the borrower, which Defendants failed to take any steps to verify given the source, caused an overvaluation of the Properties using the income capitalization approach to determine value.

   f. Defendants inflated the Appraisals without support.

   g. Defendants failed to investigate and identify material misleading information that they should have uncovered during the required personal inspection of the Property, including minor cosmetic repairs being passed off as "gut renovations" and building conditions that could not support the rent rolls that were provided.

   h. Upon information and belief, Defendants personally inspected only a small number of units, ignored visible issues regarding those apartments and other visible issues with respect to the Properties, submitted inaccurate photographs, and overlooked incomplete renovations.

      i. Defendants uncritically accepted as true the borrowers' representations that millions of dollars in renovations had been made to the Properties, but personal inspections of certain buildings made after the Appraisals were completed do not support those representations.

      j. The comparable property data used to support the Appraisals often consisted of data regarding other Chasen-owned properties, or other properties that were significantly better than the subject Property.

      k. Defendants failed to clearly and accurately set forth the Appraisals in a manner that was not misleading.

      l. Defendants failed to comply with their obligations to complete full appraisals.

      m. Defendants failed to correctly employ recognized methods and techniques to produce a credible appraisal. Thus, Defendants did not employ recognized methods and techniques in violation of USPAP Standards 1-1 and 1-4.

62. SMI justifiably relied on the representations made by Defendants in the Appraisals, performed by certified, licensed appraisers, including valuations, in deciding to fund the Loans secured by the Properties. SMI reasonably believed that the information submitted by Defendants' experts was true and had been reviewed in accordance with USPAP, applicable law, and other industry standards prevalent in the appraisal industry.

63. As a direct and proximate result of Defendants' professional negligence, SMI has suffered damages. Defendants appraised the Properties at a much higher value than the actual value of the Properties, causing loans to be originated by SMI secured by Properties whose true value was substantially less than the misrepresented value in the Appraisals and could not support adequate recovery to SMI once the Loans defaulted, resulting in substantial losses to SMI.

**FOURTH CAUSE OF ACTION**
**(Vicarious Liability/Respondeat Superior)**

64. SMI restates and incorporates by reference the preceding paragraphs as though fully stated herein.

65. Upon information and belief, at all times relevant to this action, Masters was employed by Cushman, and was acting within the course and scope of his employment.

66. Defendants appraised the Properties at a much higher value than the actual value of the Properties, causing loans to be originated by SMI secured by Properties whose true value was substantially less than the misrepresented value in the Appraisals and could not support adequate recovery to SMI once the Loans defaulted, resulting in substantial losses to SMI.

67. Cushman is vicariously liable for the unlawful actions of its employees and/or agents, as alleged in this Complaint. As a result, Cushman is liable for SMI's damages as set forth herein.

## FIFTH CAUSE OF ACTION
### (Negligent Misrepresentation)

68. SMI restates and incorporates by reference the preceding paragraphs as though fully stated herein.

69. Defendants performed and prepared the Appraisals for SMI in connection with the Loans. The Appraisals were performed, prepared, and submitted to SMI for the purpose of originating the Loans.

70. The Appraisals contained numerous misrepresentations, including falsely representing the value of the Properties and falsely representing that the Appraisals was prepared in conformity with USPAP.

71. At the time Defendants prepared the Appraisals, they had no reasonable basis for believing the representations were true and knew or should have known the representations were false. The representations were material to SMI's decision to originate the Loans, and Defendants intended for SMI to rely on the representations made in the Appraisals for purposes of originating mortgage loans.

72. SMI justifiably relied on the representations made by Defendants in the Appraisals in deciding to originate the Loans secured by the Properties. SMI reasonably believed that the information submitted by Defendants was true and had been reviewed in accordance with USPAP and other industry standards prevalent in the appraisal industry.

73. As a direct and proximate result of Defendants' material misrepresentations, SMI has suffered damages. Defendants appraised the Properties at a much higher value than the actual value of the Properties, causing loans to be originated by SMI secured by Properties whose true value was substantially less than the misrepresented value in the Appraisals and could not support adequate recovery to SMI once the Loans defaulted, resulting in substantial losses to SMI.

## SIXTH CAUSE OF ACTION
### (Breach of Contract)

74. SMI restates and incorporates by reference the preceding paragraphs as though fully stated herein.

75. SMI entered into the Contracts with Defendants to prepare and furnish appraisals which assessed the value of the Properties based upon accurate facts and reasonable assumptions, and were performed in a professionally competent manner.

76. Failure to follow USPAP's requirements in and of itself states a cause of action for breach of contract. This failure permeated and voided the Contracts in their entirety. Because a void contract is invalid from inception, none of the provisions therein, including the limitations provisions, is enforceable.

77. Defendants breached the Contracts by preparing and furnishing Appraisals which grossly overvalued the value of the Properties and misstating significant facts.

78. As a result of Defendants' breach of contract, SMI has suffered damages. Defendants appraised the Properties at a much higher value than the actual value of the Properties,

causing loans to be originated by SMI secured by Properties whose true value was substantially less than the misrepresented value in the Appraisals and could not support adequate recovery to SMI once the Loans defaulted, resulting in substantial losses to SMI.

## **PRAYER FOR RELIEF**

WHEREFORE, SMI demands judgment against Defendants:

a) Determining that the Contracts are void;

b) An award of damages in favor of SMI against Defendants, jointly and severally, for all damages sustained as a result of Defendants' actions, in an amount to be proven at trial, but including at a minimum:

  i. SMI's monetary losses, in an amount to be determined, including losses resulting from originating loans based on misleading Appraisals that misrepresented the Properties' values to be much higher than their actual values and could not support adequate recovery to SMI once the Loans defaulted;

  ii. Attorneys' fees and costs;

  iii. Prejudgment interest at the maximum legal rate; and

  iv. Such other and further relief as the Court may deem just and proper.

Dated: January 23, 2026                     Respectfully submitted,


                                                ___/s/John M. Murdock_____
                                                John M. Murdock, Esq. (FedBar #27848)
                                                (703) 992-6950
                                                jmurdock@pottermurdock.com
                                                POTTER & MURDOCK, P.C.
                                                252 N. Washington Street
                                                Falls Church, VA  22046
                                                *Attorneys for Plaintiff*
                                                *StanCorp Mortgage Investors, LLC*