UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| STANCORP MORTGAGE INVESTORS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>CUSHMAN & WAKEFIELD OF MARYLAND, LLC,<br>CUSHMAN & WAKEFIELD OF WASHINGTON D.C., INC.,<br>CUSHMAN & WAKEFIELD OF VIRGINIA, LLC,<br>CUSHMAN & WAKEFIELD OF TEXAS, INC.,<br>CUSHMAN & WAKEFIELD, INC. and<br>DAVID MASTERS,<br><br>Defendants. | Case No.: 1:26-cv-313 |

**FIRST AMENDED COMPLAINT**

Plaintiff, StanCorp Mortgage Investors, LLC ("SMI"), by and through its undersigned counsel, as and for its first amended complaint against Cushman & Wakefield of Maryland, LLC ("Cushman ~~Maryland~~MD"), Cushman & Wakefield of Washington D.C., Inc. ("Cushman ~~D.C."),~~DC"), Cushman & Wakefield of Virginia, LLC ("Cushman ~~Virginia~~VA"), Cushman & Wakefield of Texas, Inc. ("Cushman ~~& Wakefield") (Cushman Maryland, Cushman D.C., Cushman Virginia~~TX") and Cushman & Wakefield, Inc. ("Cushman Inc.") (Cushman MD, Cushman DC, Cushman VA, Cushman TX and Cushman Inc. together, "Cushman Entities") and David Masters ("Masters") ~~(Masters and Cushman together, "Defendants"),~~ and in support alleges:

**Nature of the Action**

1.      This case arises out of a ~~series of grossly negligent~~fraudulent scheme, gross negligence, abject professional failures, and ~~misleading appraisals provided~~blatant disregard for

1

professional appraisal ethics and standards perpetrated by the various Cushman Entities and Masters (collectively, "Defendants to") against SMI in order to induce, which conduct induced SMI to originate twenty-seven (27) separatefour (24) refinancing loans to("Loans") to various LLCs (the "LLCs") controlled by Brandon Chasen ("Chasen") and Paul Davis ("Davis"), ") (the LLCs, Chasen and Davis together, the "Borrower(s)"), causing SMI significant losses.

2.    The Loans were personally "guaranteed" by Chasen and Davis and secured by the respective multi-family properties and at least oneand/or commercial buildingproperties in Maryland and Virginia. At issue (collectively, the "Properties") that the Loans were intended to refinance.

3.    SMI engaged various Defendants (the "Engaging Parties") to perform appraisals (the "Appraising Parties") on the aforementioned properties ("Appraisal(s)") and issue an Appraisal report ("Appraisal Report").

4.    A list of each Property, date of Appraisal Report, loan amount, and identification of each Defendant's role in each Appraisal is attached hereto as ***Exhibit A*** and described further *infra*.

5.    SMI relied on the Appraisal Reports in this litigation are twenty-five (25) loans (the "Loans") originatedunderwriting the Loans and/or making credit decisions pertaining to the LLCs and personally guaranteed by Chasen and Davis that were secured by properties in Maryland and Virginia (the "Properties"). The Properties were appraised (the "Appraisals") by Cushman Maryland, origination of the Loans.

6.    Masters purportedly prepared 20 of the 24 appraisals.

1.    Cushman D.C. and Cushman Virginia primarily through their employee, Masters.

2.7.    CushmanInc. markets itself on its website as a "global real estate services leader" that "will never settle for the world that's being built," but instead, will relentlessly "drive it

**Formatted:** Bullets and Numbering

forward for [its] clients, colleagues and communities." In particular, its Valuation & Advisory practice states it provides clients "with accurate, reliable valuations that guide intelligent debt and equity decisions in real time." Moreover, the V&A practice touts its expertise and technical knowledge to offer valuations and advisory based on "constantly updated market data."("V&A") practice touts itself as delivering "comprehensive insight across the full spectrum of commercial real estate in the US," backed by "more than 500 credentialed professionals" who provide "valuations, rigorous due diligence, and strategic advisory services for every asset type," including multifamily. The V&A practice further holds itself out as a "trusted partner[]" who delivers "*objective analysis that supports confident investment decisions and maximizes returns* in dynamic market conditions." In reality, and to SMI's detriment, Defendants failed to deliver any of the expertise, rigor, or objectivity they so prominently advertised – and continues to advertise.

3.    The Defendants greatly inflated the value of the Properties by, among other things, misrepresenting the physical characteristics and quality of the Properties and using in their calculation of value the Properties' inflated rent rolls and occupancy rates to make the current and prospective rental income from the Properties appear much higher than it actually was or could become.

4.    Defendants misled SMI by misrepresenting that millions of dollars of renovations had been completed, describing minor cosmetic repairs as major rehab projects, falsely describing small work cubicles as full apartments, falsely representing studios as one bedrooms, and using inflated rent rolls and occupancy rates that were out of all proportion to the truth.

5.    Masters prepared the Appraisals for twenty (20) of the Properties. The Loans and details of each Appraisal are set forth in the chart attached hereto as *Exhibit A*.

3

8.    ~~After the borrowers~~The Cushman Entities and their individual appraisers, including Masters, are required to follow the Uniform Standards of Professional Appraisal Practice ("USPAP") when performing appraisal services. USPAP is the generally recognized ethical and performance standards for the appraisal profession in the United States. It sets forth the minimum standards that property appraisers, including commercial real estate property appraisers, are required to follow. USPAP has also been incorporated into the law in several states, including Maryland, and governs the professional actions of those states' licensees.

9.    In several states, including Maryland and Virginia, licensed appraisers are required to successfully complete USPAP courses. *See, e.g.*, Code Md. Regs. 09.19.02.01; 18 VAC 130-20-210.

10.    Defendants certified to SMI that they would follow, and had followed, USPAP with regard to the Appraisals.

11.    The Cushman Entities and their individual employee appraisers, including Masters, know that appraisals should be objective, impartial, and unbiased and, further, that lenders expect property valuations in the reports to be based on market data, facts, and statistics as well as the characteristics of the property itself.

12.    SMI reasonably believed it was in good hands relying on the relevant Appraising Parties to perform the Appraisals, and Defendants knew that SMI would rely on the appraisal reports to make credit decisions regarding the requested Loans.

13.    Each Appraisal provided by the Appraising Parties met or exceeded the value necessary to approve the requested loan amounts. *See Ex. A*.

14.    In reliance on the Appraisals, SMI issued the Loans to various LLCs as described in Exhibit A and made other credit-related decisions.

4

15.     In mid-2024, the Borrowers began defaulting on the Loans.

16.     Following, in ~~mid~~ late 2024 and early 2025, SMI undertook steps to mitigate its losses, including retaining other appraisal firms to re-evaluate and re-appraise the subject Properties of the defaulted Loans in late 2024 and early 2025. ~~SMI also undertook an investigation into~~ *See Ex. A.*

17.     To SMI's surprise, the new appraisals consistently showed values that were well below the appraised values provided by the Appraising Parties. *See, Id.*

18.     These new appraisals raised suspicions that something may have been amiss with the original Appraisals that SMI had trusted and relied on, which caused SMI to examine what had transpired with the defaulted Loans.

19.     The investigation ~~and~~ triggered by the new appraisals brought to light~~,~~ *inter alia* the gross professional failures, the fraudulent ~~rent rolls and occupancy rates and an accurate account of property renovations. It became clear that Defendants~~ misstatements and the overall fraudulent scheme perpetrated by Defendants; they had no intention of performing unbiased and credible appraisals, and instead, planned to and did ~~not independently verify the~~ issue appraisal reports with inflated property valuations knowing that this would induce SMI to approve the Loans at significantly higher loan amounts than the Properties were actually worth.

20.     Specifically, a comparison of the original appraisals with the new appraisals revealed that the Appraising Parties greatly inflated the current and future value of the Properties by, *inter alia*:

- Completely failing to comply with USPAP despite certifying that USPAP was followed.

- Knowingly, deliberately and in bad faith relying on false data and other misinformation, often provided by the Borrower or third parties associated with the

5

Borrower without any attempt of independent verification, in violation of USPAP and their ethical professional obligations.

- Knowingly and deliberately relying on and using fraudulent rent rolls, occupancy rates, unit mixes (i.e., the number of studio, one-bedroom and/or two-bedroom units in a property), rent estimates and inaccurate accounts of property renovations (often directly from the Borrower) to form the basis of the Appraisals.

- Failing to personally inspect the interior of some of the Properties even when a "Full Inspection" was required (and, in some of the Appraisals, relying solely on interior photos and other information provided to them by third parties. by the Borrower).

- Accepting the Borrower's stated earlier purchase price of the Properties and the costs of the purported renovations at face value.

- Misrepresenting the status and timing of the purported renovations, the physical characteristics and quality of the Properties and the alleged improvements made by the Borrower.

21.    While in isolation, the deficiencies in the Appraisals may look like mere professional negligence, gross negligence or breach of contract; but in view of all the facts together, it is clear that Defendants engaged in a pattern indicative of a fraudulent scheme to prepare inflated appraisals for the purpose of inducing SMI to originate the Loans at substantially higher amounts than it otherwise would have, if at all.

6.22.    As a result of Defendants' wrongful actions, SMI has incurred significant losses on the Loans.

**The Parties**

7.23.    Plaintiff SMI is an Oregon limited liability company with its principal place of business in Hillsboro, Oregon. SMI's sole member is StanCorp Financial Group, Inc., a corporation organized and existing under the laws of the state of Oregon with its principal place of business in Portland, Oregon.

6

8.24.   Defendant Cushman MarylandMD is a Maryland limited liability company with its principal place of business in Baltimore, Maryland. Upon information and belief, none of Cushman Maryland's direct or indirect members is a citizen of Oregon. The sole member of Cushman MD is Cushman & Wakefield U.S., Inc. US ("Cushman US"), which is a Missouri corporation with its principal place of business in Illinois.

9.25.   Defendant Cushman D.C.DC is a corporation organized and existing under the laws of Washington, D.C. with its principal place of business in Washington, D.C.

10.26.  Defendant Cushman VirginiaVA is a Virginia limited liability company with its principal place of business in Virginia. Upon information and belief, noneThe sole member of Cushman Virginia's direct or indirect membersVA is Cushman US, which is a citizenMissouri corporation with its principal place of Oregon. business in Illinois.

27.   Defendant Cushman & WakefieldDefendant Cushman TX is a corporation organized and existing under the laws of Texas with its principal place of business in Texas.

11.28.  Defendant Cushman Inc. is a corporation organized and existing under the laws of the state of New York with its principal place of business in New York.

12.29.  Defendant Masters is an individual residingdomiciled in the State of Maryland. Masters is a state certified and licensed real estate appraiser. Upon information and belief, Masters was employed by Cushman at all relevant timesMD from 2005 through 2025, and he became an employee of Cushman & Wakefield Regional, LLC on January 1, 2026.

### Jurisdiction and Venue

13.30.  This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the Parties' citizenship is completely diverse and the amount in controversy exceeds $75,000.

**Formatted:** Bullets and Numbering

**Formatted:** Bullets and Numbering

14.31.  Venue is proper in this federal district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

32.    The Court has personal jurisdiction over each Defendant as they are citizens of Maryland, and/or were engaged to perform, or actually performed, the services in Maryland that are the subject of this suit, including executing engagement letters.

**Factual Background**

A.  The Contracts and Defendants' Certifications

**A.  The Engagements**

15.33.  In or around 2018, Chasen and Davis sought to refinance the existing loans on the Properties which resulted in the origination of the Loans..

16.34.  From 2018 to 2024, SMI engaged Defendants the Engaging Parties as set forth below and in Exhibit A to provide credible appraisals of the Properties. (the "Engagements").

35.    For each Property, Defendants and SMI entered into a valid agreement (the "Contracts") that created contractual duties on the Some Engagements are memorialized in a writing signed on behalf of SMI and the relevant Engaging Parties, via their employees or agents ("Engagement Letter"), and some were not.

36.    Of the Engagements that were memorialized by an Engagement Letter, the particular Engaging Party who executed the Engagement Letter sometimes delegated the services described in the Engagement Letter to a different Appraising Party to perform the appraisal and issue an Appraisal Report, and sometimes performed the work itself.

37.    Nonetheless, for each Engagement, one of the Appraising Parties issued an Appraisal Report.

**Formatted:** Bullets and Numbering

38.    The particulars surrounding the Engagements, listed by Property or Engagement, are as follows:

39.    **12 W. Mongomery Street**. In or around September 2018, SMI and Cushman TX executed a letter of engagement to perform an appraisal of 12 W. Montgomery Street, Baltimore, MD in connection with a loan to an LLC controlled by Chasen and/or Davis. The appraisal was performed by Cushman MD, through Kenneth Steven Hutton and Lynda Gallagher. The appraisal was presented to SMI in an Appraisal Report that provided a Market Value As-Is ("As-Is Value") of $3,900,000 as of October 2, 2018. In reliance on, among other things, the appraisal value of the property, SMI loaned $2,850,000 to the Borrower. *See, Ex. A.*

40.    **1702 Light Street**. In or around December 2018, SMI and Cushman TX executed a letter of engagement to perform an appraisal of 1702 Light Street, Baltimore, MD in connection with a loan to an LLC controlled by Chasen and/or Davis. The appraisal was performed by Cushman MD, through Kenneth Steven Hutton and Lynda Gallagher. The appraisal was presented to SMI in an Appraisal Report that provided an As-Is Value of $3,925,000 as of December 27, 2018, a Prospective Market Value Upon Completion ("Completion Value") of $3,975,000 as of February 1, 2019, and a Prospective Market Value Upon Stabilization ("Stabilization Value") of $4,075,000 as of May 1, 2019. In reliance on, among other things, the appraisal value of the property, SMI loaned $3,050,000 to the Borrower. *See, Id.*

41.    **415 St. Paul Place**. In or around January 2019, SMI and Cushman TX executed a letter of engagement to perform an appraisal of 415 Saint Paul Place, Baltimore, MD in connection with a loan to an LLC controlled by Chasen and/or Davis. The appraisal was performed by Cushman MD, through Masters. The appraisal was presented to SMI in an Appraisal Report that provided an As-Is Value of $3,650,000 as of January 31, 2019 and a Stabilization Value of

9

$4,100,000 as of July 1, 2019. In reliance on, among other things, the appraisal value of the property, SMI loaned $3,000,000 to the Borrower. *See, Id.*

42.    **1719 Eastern Ave**. In or around June 2019, SMI and Cushman MD executed a letter of engagement to perform an appraisal of 1719 Eastern Avenue, Baltimore, MD in connection with a loan to an LLC controlled by Chasen and/or Davis. The appraisal was performed by Cushman MD, through Masters. The appraisal was presented to SMI in an Appraisal Report that provided an As-Is Value of $4,150,000 as of July 11, 2019 and a Stabilization Value of $4,450,000 as of September 1, 2019. In reliance on, among other things, the appraisal value of the property, SMI loaned $3,300,000 to the Borrower. *See, Id.*

43.    **1742 Fleet Street**. In or around October 2019, SMI and Cushman MD executed a letter of engagement to perform an appraisal of 1742 Fleet Street, Baltimore, MD in connection with a loan to an LLC controlled by Chasen and/or Davis. The appraisal was performed by Cushman MD, through Masters. The appraisal was presented to SMI in an Appraisal Report that provided an As-Is Value of $4,900,000 as of December 18, 2019 and a Stabilization Value of $5,050,000 as of February 1, 2020. In reliance on, among other things, the appraisal value of the property, SMI loaned $3,625,000 to the Borrower. *See, Id.*

44.    **1617 Eastern Avenue**. In or around February 2020, SMI and Cushman MD executed a letter of engagement to perform an appraisal of 1617 Eastern Avenue, Baltimore, MD in connection with a loan to an LLC controlled by Chasen and/or Davis. The appraisal was performed by Cushman MD, through Masters. The appraisal was presented to SMI in an Appraisal Report that provided an As-Is Value of $6,900,000 as of March 20, 2020 and a Stabilization Value of $8,500,000 as of July 1, 2020. In reliance on, among other things, the appraisal value of the property, SMI loaned $6,300,000 to the Borrower. *See, Id.*

10

45.    **1122-1126 N. Calvert Street**. In or around May 2020, Cushman TX directed Cushman MD to perform an appraisal of 1122-1126 N. Calvert Street, Baltimore, MD in connection with a loan to an LLC controlled by Chasen and/or Davis. The appraisal was performed by Cushman MD, through Masters. The appraisal was presented to SMI in an Appraisal Report that provided an As-Is Value of $4,200,000 as of June 3, 2020, a Completion Value of $5,000,000 as of August 15, 2020, and a Stabilization Value of $5,100,000 as of October 1, 2020. In reliance on, among other things, the appraisal value of the property, SMI loaned $3,800,000 to the Borrower. *See, Id.*

46.    **1709-1719 Fleet Street ("The Archer")**. In or around November 2020, Cushman TX directed Cushman MD to perform an appraisal of The Archer, Baltimore, MD in connection with a loan to an LLC controlled by Chasen and/or Davis. The appraisal was performed by Cushman MD, through Masters. The appraisal was presented to SMI in an Appraisal Report that provided an As-Is Value of $10,900,000 as of November 20, 2020 and a Stabilization Value of $11,800,000 as of February 1, 2021. In reliance on, among other things, the appraisal value of the property, SMI loaned $8,050,000 to the Borrower. *See, Id.*

47.    **115 E. Eager Street ("Belvedere Place Apartments")**. In or around December 2020, Cushman TX directed Cushman MD to perform an appraisal of The Belvedere Place Apartments, Baltimore, MD in connection with a loan to an LLC controlled by Chasen and/or Davis. The appraisal was performed by Cushman MD, through Masters. The appraisal was presented to SMI in an Appraisal Report that provided an As-Is Value of $2,850,000 as of January 11, 2021. In reliance on, among other things, the appraisal value of the property, SMI loaned $2,100,000 to the Borrower. *See, Id.*

48.    **902-904 Saint Paul Street**. In or around December 2020, Cushman TX directed Cushman MD to perform an appraisal of 902-904 Saint Paul Street, Baltimore, MD in connection with a loan to an LLC controlled by Chasen and/or Davis. The appraisal was performed by Cushman MD, through Masters. The appraisal was presented to SMI in an Appraisal Report that provided an As-Is Value of $4,600,000 as of January 11, 2021. In reliance on, among other things, the appraisal value of the property, SMI loaned $3,425,000 to the Borrower. *See, Id.*

49.    **211 Saint Paul Place ("The James")**. In or around January 2021, "Cushman & Wakefield"[1] directed Cushman MD to perform an appraisal of The James, Baltimore, MD in connection with a loan to an LLC controlled by Chasen and/or Davis. The appraisal was performed by Cushman MD, through Masters. The appraisal was presented to SMI in an Appraisal Report that provided an As-Is Value of $10,600,000 as of February 19, 2021 and a Stabilization Value of $10,600,000 as of April 1, 2021. In reliance on, among other things, the appraisal value of the property, SMI loaned $7,500,000 to the Borrower. *See, Id.*

50.    **1012, 1020, 1022, 1026 & 1038 N. Calvert Street ("Chateaus de Mount Vernon")**. In or around April 2021, "Cushman & Wakefield" directed Cushman MD to perform an appraisal of Chateaus de Mount Vernon, Baltimore, MD in connection with a loan to an LLC controlled by Chasen and/or Davis. The appraisal was performed by Cushman MD, through Masters. The appraisal was presented to SMI in an Appraisal Report that provided an As-Is Value of $11,700,000 as of May 6, 2021. In reliance on, among other things, the appraisal value of the property, SMI loaned $8,590,000 to the Borrower. *See, Id.*

---

[1] The Appraiser Company in each of these Engagement Letters is identified only as "Cushman & Wakefield." The Engagement Letters are signed by Masters, and the address is Cushman MD's office.

51.    **807, 838 & 840 Park Avenue ("Park Place")**. In or around June 2021, SMI and "Cushman & Wakefield" executed a letter of engagement to perform an appraisal of Park Place, Baltimore, MD in connection with a loan to an LLC controlled by Chasen and/or Davis. The appraisal was performed by Cushman MD, through Masters. The appraisal was presented to SMI in an Appraisal Report that provided an As-Is Value of $7,200,000 as of July 13, 2021. In reliance on, among other things, the appraisal value of the property, SMI loaned $5,370,000 to the Borrower. *See, Id.*

52.    **520 South Caroline Street ("The Caroline")**. In or around August 2021, Cushman MD directed Cushman DC to perform an appraisal of The Caroline, Baltimore, MD in connection with a loan to an LLC controlled by Chasen and/or Davis. The appraisal was performed by Cushman DC, through Chase Pike. The appraisal was presented to SMI in an Appraisal Report that provided an As-Is Value of $12,400,000 as of September 20, 2021, a Completion Value of $13,300,000 as of November 1, 2021, and a Stabilization Value of $13,600,000 as of December 1, 2021. In reliance on, among other things, the appraisal value of the property, SMI loaned $10,200,000 to the Borrower. *See, Id.*

53.    **300 Cathedral Street ("300 Cathedral")**. In or around August 2021, SMI and "Cushman & Wakefield" executed a letter of engagement to perform an appraisal of 300 Cathedral, Baltimore, MD in connection with a loan to an LLC controlled by Chasen and/or Davis. The appraisal was performed by Cushman MD, through Masters. The appraisal was presented to SMI in an Appraisal Report that provided an As-Is Value of $20,100,000 as of October 12, 2021. In reliance on, among other things, the appraisal value of the property, SMI loaned $14,810,000 to the Borrower. *See, Id.*

13

54.    **606, 608, 610 Cathedral Street & 617 Ploy Street ("The Lyn")**. In or around December 2021, SMI and "Cushman & Wakefield" executed a letter of engagement to perform an appraisal of The Lyn, Baltimore, MD in connection with a loan to an LLC controlled by Chasen and/or Davis. The appraisal was performed by Cushman MD, through Masters. The appraisal was presented to SMI in an Appraisal Report that provided an As-Is Value of $10,700,000 as of January 4, 2022.  In reliance on, among other things, the appraisal value of the property, SMI loaned $8,000,000 to the Borrower. *See, Id.*

55.    **311 Cathedral Street ("The Tobee")**. In or around January 2022, SMI and "Cushman & Wakefield" executed a letter of engagement to perform an appraisal of The Tobee, Baltimore, MD in connection with a loan to an LLC controlled by Chasen and/or Davis. The appraisal was performed by Cushman MD, through Masters. The appraisal was presented to SMI in an Appraisal Report that provided an As-Is Value of $11,300,000 as of March 17, 2022. In reliance on, among other things, the appraisal value of the property, SMI loaned $8,450,000 to the Borrower. *See, Id.*

56.    **601 South Broadway ("The Chelsea")**. In or around July 2022, SMI and "Cushman & Wakefield" executed a letter of engagement to perform an appraisal of The Chelsea, Baltimore, MD in connection with a loan to an LLC controlled by Chasen and/or Davis. The appraisal was performed by Cushman MD, through Masters. The appraisal was presented to SMI in an Appraisal Report that provided an As-Is Value of $15,700,000 as of October 13, 2022 and a Stabilization Value of $15,900,000 as of January 1, 2023.  In reliance on, among other things, the appraisal value of the property, SMI loaned $11,550,000 to the Borrower. *See, Id.*

57.    **417 & 419 Saint Paul Place ("The Courtland II")**. In or around July 2022, SMI and "Cushman & Wakefield" executed a letter of engagement to perform an appraisal of The

14

Courtland II, Baltimore, MD in connection with a loan to an LLC controlled by Chasen and/or Davis. The appraisal was performed by Cushman MD, through Masters. The appraisal was presented to SMI in an Appraisal Report that provided an As-Is Value of $9,650,000 as of October 13, 2022. In reliance on, among other things, the appraisal value of the property, SMI loaned $6,800,000 to the Borrower. *See, Id.*

58.    **421 South Broadway ("The Brixton Apartments")**. In or around October 2022, SMI and "Cushman & Wakefield" executed a letter of engagement to perform an appraisal of The Brixton Apartments, Baltimore, MD in connection with a loan to an LLC controlled by Chasen and/or Davis. The appraisal was performed by Cushman MD, through Masters. The appraisal was presented to SMI in an Appraisal Report that provided an As-Is Value of $20,700,00 as of November 18, 2022 and a Stabilization Value of $25,500,000 as of October 1, 2023. In reliance on, among other things, the appraisal value of the property, SMI loaned $18,000,000 to the Borrower. *See, Id.*

59.    **4000 Linkwood Road ("Tuscan Hills Apartments")**. In or around November 2022, SMI and "Cushman & Wakefield" executed a letter of engagement to perform an appraisal of Tuscan Hills Apartments, Baltimore, MD in connection with a loan to an LLC controlled by Chasen and/or Davis. The appraisal was performed by Cushman MD, through Masters. The appraisal was presented to SMI in an Appraisal Report that provided an As-Is Value of $19,500,000 as of January 7, 2023 and a Stabilization Value of $19,700,000 as of April 15, 2023. In reliance on, among other things, the appraisal value of the property, SMI loaned $13,415,000 to the Borrower. *See, Id.*

60.    **85 29th Street ("The Jimmy")**. In or around May 2023, SMI and "Cushman & Wakefield" executed a letter of engagement to perform an appraisal of The Jimmy, Newport News,

VA in connection with a loan to an LLC controlled by Chasen and/or Davis. The appraisal was performed by Cushman VA, through Masters and Randall Tester. The appraisal was presented to SMI in an Appraisal Report that provided an As-Is Value of $26,100,000 as of May 30, 2023 and a Stabilization Value of $26,600,000 as of August 1, 2023. In reliance on, among other things, the appraisal value of the property, SMI loaned $18,200,000 to the Borrower. *See, Id.*

61.    **817 Saint Paul Street ("The Davis")**. In or around November 2023, SMI and Cushman Inc. executed a letter of engagement to perform an appraisal of The Davis, Baltimore, MD in connection with a loan to an LLC controlled by Chasen and/or Davis. The appraisal was performed by Cushman MD, through Masters. The appraisal was presented to SMI in an Appraisal Report that provided an As-Is Value of $26,700,000 as of December 13, 2023. In reliance on, among other things, the appraisal value of the property, SMI loaned $20,000,000 to the Borrower. *See, Id.*

62.    **3522 Beech Avenue ("Wyman Hills")**. In or around January 2024, SMI and Cushman Inc. executed a letter of engagement to perform an appraisal of Wyman Hills, Baltimore, MD in connection with a loan to an LLC controlled by Chasen and/or Davis. The appraisal was performed by Cushman DC, through Chase Pike. The appraisal was presented to SMI in an Appraisal Report that provided an As-Is Value of $22,500,000 as of February 5, 2024. In reliance on, among other things, the appraisal value of the property, SMI loaned $16,870,000 to the Borrower. *See, Id.*

63.    Cushman MD performed appraisals via its agent, Masters, for: (1) 415 Saint Paul Place, (2) 1719 Eastern Avenue, (3) 1742 Fleet Street, (4) 1617 Eastern Avenue, (5) 1122-1126 N. Calvert Street, (6) The Archer, (7) Belvedere Place Apartments, (8) 902-904 Saint Paul Street, (9) The James, (10) Chateaus de Mount Vernon, (11) Park Place, (12) 300 Cathedral, (13) The Lyn,

16

(14) The Tobee, (15) The Chelsea, (16) The Courtland II, (17) The Brixton Apartments, (18) Tuscan Hills Apartment and (19) The Davis.

64.    Cushman MD performed appraisals via its agents, Kenneth Steven Hutton and Lynda Gallagher, for: (1) 12 W. Montgomery Street and (2) 1702 Light Street.

65.    Cushman DC performed appraisals via its agent, Chase Pike, for: (1) Wyman Hills and (2) The Caroline.

66.    Cushman VA performed an appraisal via its agents, Masters and Randall Tester, for The Jimmy.

67.    Cushman MD signed Engagement Letters via its agent, Masters, for: (1) The Caroline, (2) 1719 Eastern Avenue, (3) 1742 Fleet Street and (4) 1617 Eastern Avenue. Cushman MD then completed the Appraisals.

68.    Cushman TX signed Engagement Letters via its agent, Sid Womack, for: (1) 415 Saint Paul Place, (2) 1122-1126 N. Calvert Street, (3) The Archer, (4) Belvedere Place Apartments, (5) 902-904 Saint Paul Street, (6) 12 W. Montgomery Street and (7) 1702 Light Street. Cushman TX then delegated to its agent, Cushman MD, which completed the Appraisals within the scope of its delegated authority.

69.    Cushman Inc. signed Engagement Letters via its agent, Masters, for: (1) The Davis and (2) Wyman Hills. Cushman Inc. then delegated to its agents, Cushman MD and Cushman DC, to complete the Appraisals for The Davis and Wyman Hills, respectively, within the scope of their delegated authority.

70.    "Cushman and Wakefield" signed Engagement Letters via its agent, Masters, for: (1) The James, (2) Chateaus de Mount Vernon, (3) Park Place, (4) 300 Cathedral, (5) The Lyn, (6) The Tobee, (7) The Chelsea, (8) The Courtland II, (9) The Brixton Apartments, (10) Tuscan Hills

17

Apartments and (11) The Jimmy. "Cushman & Wakefield" then delegated to its agent, Cushman VA, which completed the Appraisal for The Jimmy within the scope of its delegated authority, and to Cushman MD, which completed the Appraisals for the remaining Properties within the scope of its delegated authority.

**B. Defendants' Certifications and USPAP**

17.    As part of Defendants.

18.71. The Contracts,each Engagement, and as well asrequired by applicable state and federal law, required and professional obligations, Defendants agreed to comply with Uniform Standards of Professional Appraisal Practice of the Appraisal Foundation ("USPAP").USPAP, and represented to SMI that they did.

**Formatted:** Bullets and Numbering

19.72. The Defendants' certifications attached to eachAppraising Parties, as identified in Exhibit A, and through their individual appraisers as their agents, including Masters, certified in every Appraisal expressly provideReport that, to the best of their knowledge and belief, in relevant part:

a. The The Appraisals contain true and correct statements of fact contained in this report are true and correct.

b. The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, if applicable, and are ourthe appraiser's personal, impartial, and unbiased professional analyses, opinions, and conclusions.

c. We have The appraiser has no bias with respect to the subject property that is the subject of this report or to the parties involved with thise assignment.

d. The reported analyses, opinions, and conclusions were developed, and this report has beenthe reports were prepared, with the requirements of the Code of Professional Ethics & Standards of Professional Practice of the Appraisal Institute, which include the USPAP.

e. We made personal inspections of the Properties.

18

     e.   As of the date of the report, the appraiser has completed continuing education for Designated Members of the Appraisal Institute.

73.    Defendants, by virtue of their specialized knowledge, possessed ~~a~~ legal ~~obligation~~and professional obligations to use reasonable care, including compliance with USPAP, to appraise the Properties.

74.    USPAP is also incorporated by reference into the law in Maryland, Virginia, Oregon, Illinois, New York, and Texas. It governs the professional activities of appraisers licensed in those states. *See* MD. Code. Ann. Business Occupations and Professions § 16-208 (b); COMAR 09.19.05.01; 18 VAC 130-20-180; OAR 161-025-0060; 225 ILCS 458/10-5; 19 NYCRR 1106.1~~conduct~~; Tex. Occ. Code Ann. § 1103.405.

75.    Of relevance, USPAP includes, without limitation, the following:

    a.   Standards Rule 1-1(c) prohibits an appraiser from rendering appraisal services in a careless or negligent manner, such as by making a series of errors, that, although individually might not significantly affect the result of an appraisal, in the aggregate affects the credibility of those results.

    b.   Standards Rule 1-2 requires an appraiser to identify the characteristics of the property from reasonably reliable sources such as a property inspection, legal description, photographs relevant to the type and definition of values and intended use of the appraisal.

    c.   Standards Rule 1-4 requires that based on the type of valuation method used, the appraiser must collect, verify, and analyze all information necessary for credible assignment results.

    d.   Standards Rule 1-2(f) permits the use of extraordinary assumptions if an appraiser has a reasonable basis for such an assumption.

    e.   A personal inspection, as that term is defined in USPAP's "Definitions" and performed in accordance with USPAP, requires an "in person observation of the subject property."

    f.   Standards Rule 1-6 requires an appraiser to reconcile the quality and quantity of data available and analyzed within the approaches used.

**C.  Defendants' Misrepresentations and Omissions and USPAP Violations**

19

20.76.  In all of the Appraisals in observance of reasonable care, the relevant Appraising Parties certified compliance with USPAP. These representations were patently false as explained below and identified in the chart attached hereto as ***Exhibit B***.

77.     Defendants knew that the value of each Property was particularly important to SMI because each Property served as security for a particular Loan, and they knew that performing appraisals that were not compliant with USPAP would affect those values, and that SMI would rely on the Appraisals in making a lending decision.

78.     During the time between the original appraisals and the second appraisals, the As-Is Value of each Property dropped at least 10%, and all but three dropped by over 30%. *See Ex. A*. All of the Appraisals included misrepresentations in addition to inflated value and the failure to comply with USPAP. *See Ex. B*.

79.     Specifically, the 24 Appraisals misrepresented several facts:

a.  All of the Appraisals stated that they were performed in accordance with USPAP;

b.  All of the Appraisals inflated the value of the Properties;

c.  11 of the Appraisals included misstatements regarding rent rolls and/or rent estimates;

d.  16 of the Appraisals included misstatements regarding the amount spent on renovations;

e.  17 of the Appraisals included misstatements regarding the description and status of renovations that had been or would be;

f.  15 of the Appraisals included misstatements regarding occupancy rates;

g.  13 of the Appraisals included misstatements regarding the unit mix in the property;

h.  12 of the Appraisals included misstatements regarding the rent comparables for the property.

**Formatted:** Bullets and Numbering

80. Exhibit B identifies each Property and the misrepresentations made in each Appraisal Report for that Property and the party stating them, and those statements are incorporated herein by reference.

81. The fraudulent rent rolls, occupancy rates and/or unit mix figures caused an overvaluation of the Properties as the income capitalization approach used to determine value relied exclusively on the rent rolls provided by the existing owner (and also Borrower) with no independent verification or analysis.

82. The extraordinary assumptions made by the Appraising Parties violated USPAP Standards Rule 1-2(f) in that they unreasonably assumed that the renovations would be completed by a specified date. Not only was the date unrealistic under the circumstances, but, even if the renovations were completed, there was no possibility that the rents promised by the rent rolls would be generated by such date.

83. Moreover, in many instances, the Appraising Parties relied solely on information provided by the Borrower – the most biased party to the entire transaction.

84. Despite knowing they should not be directly communicating with a Borrower, let alone relying on a Borrower's statements as to the extent of, completeness of, and costs of renovations, the Appraising Parties did not independently validate information provided by the Borrower/owner, even where, in some instances, the information was readily verifiable by simply walking into the building to see if the renovations were completed or near completed as stated.

85. The Appraising Parties knowingly or uncritically accepted Chasen's false representations that millions of dollars in renovations had been made, when a competent inspection performed in accordance with USPAP would have disclosed that either no renovations had

21

occurred, or, what renovations had been done, were nothing more than cheap, superficial, cosmetic repairs, and certainly not millions of dollars' worth of renovations and repairs.

86. By reporting that the Properties were in good condition and that they had undergone millions of dollars in renovations when a basic property inspection made it obvious that the condition of the Properties was profoundly unsatisfactory, and major renovations, if any, were not performed, the Appraisals violated USPAP Standards Rule 1-2. It was clearly inappropriate and in violation of USPAP to represent in several of the Appraisals that "the quantity and quality of the data for the Income Capitalization Reports is considered very good to excellent or good."

87. Many of the Engagements also required "Full Inspections" of the Properties, which by industry standards means the appraiser inspects both the interior and the exterior.

88. In some instances, the Appraising Parties failed to disclose that they only conducted an exterior inspection. Specifically, the Appraising Parties failed to personally inspect the interior of some of the Properties, but, instead, relied on photographs and other information regarding the interior from the Borrower, who is not an objective or unbiased party to the transaction.

21.89. Upon information and belief, Defendantsthe Appraising Parties prepared Appraisals that mispresented and inflated the value of the Properties in order to make the loan transactionsamounts requested by the LLCs and Chasen appear less risky than they actually were, and causedcausing SMI to lend far greater sums than an accurately appraised value of the Properties would have supported, thereby breaching their obligations under the Contracts.. The intentional decision to not follow USPAP in order to inflate the values rendered the engagements void ab initio.

Upon informationD.    SMI's Detrimental Reliance and belief, Damages

**Formatted:** Bullets and Numbering

**Formatted:** Font: Bold

90.     SMI relied upon Defendants' representations and assurances regarding the quality and value of the collateral underlying the Loans when originating the Loans at the amounts requested by the Borrower, such as their representations and assurances that the Properties were in good condition and renovations had been made.

~~22.~~91.  Defendants knew, or should have known at the time the Appraisals were completed, that the Appraisals were grossly inaccurate, and further that they were being relied upon by SMI to approve and fund the Loans. Had the Appraisals been accurate, SMI would not have originated the Loans as it ultimately did or would have originated loans at a substantially lower original principal amount.

23.     ~~As a result of the foregoing, SMI has suffered damages. Defendants appraised the Properties at a much higher value than the actual value of the Properties, causing loans to be originated by SMI secured by Properties whose true value was substantially less than the misrepresented value in the Appraisals and could not support adequate recovery to SMI once the Loans defaulted, resulting in substantial losses to SMI.~~

**B.   ~~The Appraisals~~**

92.     ~~USPAP is incorporated by reference into the law in Maryland, Virginia, Oregon, Illinois and New York.~~Upon information and belief, during the appraisal process, some or all of the Defendants knew the amount the Borrower had requested of SMI for the Loans.

24.     ~~*See* MD. Code. Ann. Business Occupations and Professions § 16-208 (b); COMAR 09.19.05.01; 18 VAC 130-20-180; OAR 161-025-0060; 225 ILCS 458/10-5; 19 NYCRR 1106.1.~~

25.     ~~The Appraisals provided and approved by Defendants certify that they comply with the USPAP standards as well as others such as Defendants' interpretation of SMI's guidelines, and Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA),~~

23

but the Appraisals fall far short of such compliance. Attached hereto as ***Exhibit B*** is the Appraisal for 817 St. Paul Street, Baltimore, Maryland (the "817 St. Paul Street Appraisal"). Each of the Appraisals contains a substantially similar, or identical, representation.

26. Examples of Defendants' omissions and failures to follow USPAP, thereby rendering their certifications untrue, include, without limitation, the following:

a. USPAP Rule 1-2 requires an appraiser to identify the characteristics of the property from reasonably reliable sources such as a property inspection, legal description, photographs relevant to the type and definition of values and intended use of the appraisal.

By reporting that the Properties were in good condition and that they had undergone millions of dollars in renovations when a basic property inspection made it obvious that the condition of the Properties was profoundly unsatisfactory and major renovations, if any, were not performed, the Appraisals violated Rule 1-2. It was clearly inappropriate and in violation of USPAP to represent in several of the Appraisals that "the quantity and quality of the data for the Income Capitalization Reports is considered very good to excellent or good."

b. USPAP Rule 1-4 requires that based on the type of valuation method used, the appraiser must collect, verify, and analyze all information necessary for credible assignment results. The fraudulent rent rolls caused an overvaluation of the Properties as the income capitalization approach used to determine value relied exclusively on the rent rolls provided by the borrowers with no independent verification or analysis.

c. USPAP Rule 1-2(f) permits the use of extraordinary assumptions if an appraiser has a reasonable basis for such an assumption. The extraordinary assumptions made by the Defendants violated Rule 1-2(f) in that they unreasonably assumed that the renovations would be completed by a specified date. Not only was the date unrealistic under the circumstances but even if the renovations were completed there was no possibility that the rents promised by the rent rolls would be generated by such date.

d. Defendants claim to have performed a personal inspection of the property. However, upon information and belief, Defendants visited only a small number of units, ignored visible issues regarding the Properties visited, submitted inaccurate photographs, and overlooked incomplete renovations. A personal inspection performed in accordance with USPAP, which requires an "in person observation of the subject property," would have clearly shown that (i) the millions of dollars in renovation reported in the Appraisals were no more than superficial cosmetic

repairs and (ii) the rent stated in the rent rolls for many of the Properties were not realistic and should not have been used in the calculation of value.

e. USPAP Rule 1-6 requires an appraiser to reconcile the quality and quantity of data available and analyzed within the approaches used. Defendants violated Rule 1-6 by using as comparable data, the data from other properties managed by Chasen without further analysis, as well as properties that were in significantly better condition than the Properties.

27. In the 817 St. Paul Street Appraisal, Defendants accepted as true the borrower's representations that: (i) the Property included a mix of one, two and three bedroom units when 61 of those units were actually studio apartments (Ex. B at 4); (ii) rents ranged from $1,975 to $3,400 per unit, well above the average asking rent of $1,502 per unit in the Baltimore region (*Id.* at 38, 77-78); and (iii) the Property had been "gut renovated" at a cost of $14,580,000, or $144,356 per unit, which is contradicted by photographs and a basic visual inspection of the Property. (*Id.* at 12-13, 58).

28. In sum, by their actions and omissions cumulatively considered, Defendants conducted the Appraisals in a grossly negligent manner and violated USPAP Rule 1-1 by committing substantial errors of omission and commission that significantly and adversely affected the Appraisals.

29. Defendants accepted uncritically Chasen's false representations that millions of dollars in renovations had been made, when a competent personal inspection would have disclosed that either no renovations had occurred or what renovations had been done, nothing more than cheap, superficial, cosmetic repairs had been performed.

C. SMI's Damages

30. In originating the Loans, SMI relied upon Defendants' representations and assurances regarding the quality of the collateral underlying the Loans, such as their

25

~~representations and assurances that the Properties were in good condition and renovations had been made.~~

~~31.~~93.  But for the misrepresentations and omissions in the Appraisals, SMI would not have originated the Loans as it ultimately did, because those representations and omissions, and the Appraisals themselves, were material to its decision to originate the Loans.

~~32.1.As a result of the foregoing, SMI has suffered damages. Defendants appraised the Properties at a much higher value than the actual value of the Properties, causing loans to be originated by SMI secured by Properties whose true value was substantially less than the misrepresented value in the Appraisals and could not support adequate recovery to SMI once the Loans defaulted, resulting in substantial losses to SMI.~~

94.      The Appraising Parties appraised the Properties at materially higher values than the actual value of the Properties, causing Loans to be originated by SMI secured by Properties whose true values were substantially less than the misrepresented values in the Appraisals. These Properties could not support adequate recovery to SMI once the Loans defaulted, resulting in substantial losses to SMI.

33.      As a result of the foregoing, SMI has suffered damages.~~SMI has incurred substantial losses due to the poor quality of the collateral underlying the Loans. The poor quality is reflected in far diminished value of the Properties upon reappraisal by SMI.~~

~~**D.  Contractual and Statutes of Limitations Do Not Bar SMI's Claims**~~

~~**1. Continuing Negligence/Continuing Violation**~~

~~34.      Defendants engaged in the conduct alleged herein on a continuing and ongoing basis from at least 2018 to mid-2024. The negligent/grossly negligent conduct did not occur just once, but rather occurred in a series of separate acts.~~

26

35.    ~~The same violation—inflating the Appraisals—was committed at the time of each Property appraisal.~~

36.    ~~Defendants' conduct was a fixed and continuing practice, and therefore a continuing violation.~~

95.    ~~2. Negligent~~

**E.   ~~Concealment/Fraudulent~~ Concealment**

96.    SMI had neither actual nor constructive knowledge of the facts constituting its claims for relief at the time of the Appraisals.

97.    SMI did not discover, and could not have discovered through the exercise of reasonable diligence, the existence of the wrongdoing alleged herein until after the Loans began to default and after ~~an internal investigation was completed after~~SMI received the second appraisals ~~were performed. Prior to that, Defendants'~~as part of its review of the Loan defaults.

~~37.~~98. Defendants made misrepresentations and omissions, and otherwise engaged in a scheme to make and conceal fraudulent misrepresentations and omissions, that did not reveal facts that would put SMI on inquiry notice that the collateral value securing each of the Loans was grossly inflated.

~~38.~~99. Defendants' misrepresentations and omissions, and/or their scheme to make and conceal fraudulent misrepresentations and omissions, were and are, by their very nature, self-concealing, as they were set forth in seemingly routine Appraisals ~~that contained the data upon which they were based, and there were disclaimers and assumptions in the appendices.~~with purportedly objective data and other information to support the appraiser's opinions and conclusions and to show compliance with USPAP. SMI believed that Defendants were exercising reasonable care in conducting the Appraisals.

27

39.100.    A reasonable person under the circumstances would not have begun an investigationa review of the accuracy of the Appraisals until well after the defaults. For nearly six years, the Loans performed as expected. Indeed, SMI discovered the wrongdoing well after the defaults, after an investigation that was triggered by the second appraisals.

101.    FIRST CAUSESMI had no reason to believe the defaults were caused by anything but a borrower who had expanded too quickly and overextended themselves. SMI did not uncover Defendants' misconduct until well after the defaults and after SMI commissioned the second appraisals and an investigation was conducted. Those appraisals revealed significantly lower as-is values than the original Appraisals, even though some were completed just over a year later.

102.    SMI exercised reasonable diligence. SMI could not have discovered the misconduct at an earlier date by the exercise of reasonable diligence.

103.    Yet, Defendants further stymied discovery due to the deceptive practices and techniques of secrecy they employed to conceal their misconduct by producing seemingly thorough Appraisals with fulsome appendices detailing the efforts they purportedly made.

104.    Upon information and belief, throughout the relevant period, Defendants effectively, affirmatively, and fraudulently concealed their unlawful conduct from SMI thorough Appraisals that appeared on their face to have included thorough inspections and analyses. Defendants engaged in unlawful conduct in a manner specifically designed to avoid detection.

105.    Upon information and belief, during the relevant period, Defendants actively concealed from SMI that the Appraisals were routinely being intentionally inflated by using unreasonable assumptions, and relying on facts that were not credible.

106.    By virtue of Defendants' fraudulent concealment of their unlawful conduct, the running of any contractual or statutes of limitations has been tolled and suspended with respect to

28

any claims and rights of action that SMI has as a result of the misconduct alleged in this Amended Complaint.

## CAUSES OF ACTION[2]

~~(Negligence)~~
**COUNT 1: Fraud/Fraudulent Misrepresentation**
**(Against All Defendants)**

~~40.~~107.    SMI restates and incorporates by reference the preceding paragraphs as though fully stated herein.

108.    Defendants entered into a scheme to inflate the values of the Properties by performing "appraisals" of these Properties without following USPAP, or any other professional standard. The inflated values were used to support the amounts requested by the LLCs and Chasen. The scheme permeates the entire appraisal relationship with SMI and is the overarching fact establishing the fraud committed by Defendants. In other words, the appraisal process was a sham effected to induce SMI to originate loans far in excess of what the collateral could support.

109.    Exhibit B identifies each Property and the misrepresentations made in connection with the Appraisal Report for that Property, and those statements are incorporated herein by reference.

110.    Each Defendant who prepared, signed or issued an Appraisal Report, or employed the Appraiser who was responsible for preparing, signing or issuing an Appraisal Report, and/or each Defendant who executed a Letter of Engagement with regard to the Engagement, as identified *supra*, is liable for fraud/fraudulent misrepresentation with regard to the misstatements made relating to that Appraisal Report/Engagement as identified on Exhibit B.

---

[2] To the extent any cause of action is inconsistent with another cause of action, such cause of action is pled in the alternative.

29

111.    The misrepresentations were made by the particular appraiser who authored the report, on the date of the respective Appraisal report, and the individual(s) who signed the Engagement Letters.

112.    Defendants are vicariously liable for the fraud/fraudulent misrepresentations made by their employee and/or agents, including Masters and the other appraisers who authored the Appraisal Reports.

113.    SMI engaged Defendants unaware of and without knowledge that they had no intention of performing an objective or accurate review. The Engagements, including the Engagement Letters, are not valid because the Appraisals of the Properties of which they were the subject were a sham.

114.    The Appraising Parties issued their appraisal reports on the Properties knowing that they would be relied upon by SMI in originating the Loans.

115.    Each Appraisal affirmatively represented that the report complied with USPAP.

116.    As set forth with more particularity in Exhibit B, in furtherance of their scheme, the Appraising Parties, *inter alia*, deliberately misrepresented the value of the Properties, ignored the USPAP requirements despite repeated representations to the contrary, misrepresented renovation budgets, misrepresented descriptions and status of renovations, misrepresented occupancy levels, misrepresented unit mixes, misstated rent rolls and rent estimates, and misrepresented rent comparables.

117.    Each of these representations was false when made.

118.    The Appraising Parties made these representations knowing that they were false.

119.    The Appraising Parties made the representations for the purpose of defrauding SMI.

120. Because the Appraisals failed to comply with USPAP, SMI was misled by the omission of essential information about the scope of work and the reliability of the report.

121. Had the Appraisals complied with USPAP, Defendants could not have issued the Appraisals with the inflated property valuations as they did.

122. SMI justifiably relied on the representations in the Appraisals that they were prepared in compliance with USPAP.

123. The Appraising Parties' valuation of each Property was false.

124. The Appraising Parties' valuation of each Property was falsely made.

125. The Appraising Parties did not have a good-faith (or any) basis for their inflated valuations of the Properties.

126. The Appraising Parties' valuations in the Appraisals were made with reckless disregard as to whether sufficient facts supported the valuations.

127. SMI justifiably relied on the valuations in the Appraisals.

128. Had SMI known of the errors in the Appraisals and the way in which they were prepared, SMI would not have originated the Loans as it ultimately did.

129. As a direct and proximate result of Defendants' scheme and each fraudulent Appraisal, SMI has suffered damages. The Properties were appraised at a much higher value than the actual value of the Properties, causing Loans to be originated by SMI secured by Properties whose true value was substantially less than the misrepresented value in the Appraisals and could not support adequate recovery to SMI once the Loans defaulted, resulting in substantial losses to SMI.

**COUNT 2: Negligent Misrepresentation**
**(Against All Defendants)**

Formatted: Font: Not Bold, No underline

Formatted: Left

130.    SMI restates and incorporates by reference the preceding paragraphs as though fully stated herein.

131.    The Appraising Parties performed and prepared the Appraisals for SMI in connection with the Loans. The Appraisals were performed, prepared, and submitted to SMI for the purpose of originating the Loans.

132.    Defendants owed SMI a duty of care.

133.    Defendants had unique and special knowledge and expertise concerning property valuations.

134.    With regard to each misrepresentation identified in Exhibit B, Defendants made those statements knowing the statements were false.

135.    Each Defendant who prepared, signed or issued an Appraisal Report, or employed the Appraiser who was responsible for preparing, signing or issuing an Appraisal Report, and/or each Defendant who executed a Letter of Engagement with regard to the Engagement, as identified *supra*, is liable for negligent misrepresentation with regard to the misstatements made relating to that Appraisal Report/Engagement identified on Exhibit B.

136.    Defendants made those misrepresentations negligently and without exercising reasonable care or competence.

137.    At the time the Appraisals were prepared, the Appraising Parties had no reasonable basis for believing the representations were true and knew or should have known the representations were false, especially where they failed to validate information provided solely by the most interested party to the Loans – the Borrower. The representations were material to SMI's decision to originate the Loans, and Defendants intended for SMI to rely on the representations made in the Appraisals for purposes of originating the Loans.

32

**Formatted:** Justified, Space After:  0 pt

**Formatted:** Bullets and Numbering

138. SMI justifiably relied on the representations made by Defendants in the Appraisals and Engagements in deciding to originate the Loans secured by the Properties. SMI reasonably believed that the information submitted by Defendants was true and had been reviewed in accordance with USPAP and other industry standards prevalent in the appraisal industry.

139. Defendants are vicariously liable for the misrepresentations made by their employee and/or agents, including Masters and the other appraisers who authored the Appraisal Reports.

140. As a direct and proximate result of Defendants' material misrepresentations, SMI has suffered damages. The Properties were appraised at a much higher value than the actual value of the Properties, causing Loans to be originated by SMI secured by Properties whose true value was substantially less than the misrepresented value in the Appraisals and could not support adequate recovery to SMI once the Loans defaulted, resulting in substantial losses to SMI.

**COUNT 3: Gross Negligence**
**(Against All Defendants)**

141. SMI restates and incorporates by reference the preceding paragraphs as though fully stated herein.

41.142. the Defendants, as aforementioned, provided the Engagements and Appraisals upon which this action is based and upon which the Loans were originated.

143. Defendants The Appraising Parties had a duty to use reasonable care in conducting the Appraisals. of the Properties.

42.144. This duty, among other things, required the Defendants Appraising Parties to conduct the Appraisals in accordance with USPAP and other applicable regulations.

43.145. The actions of Defendants were negligent and Defendants breached this duty their duties by:

a. failing to provide appraisals and appraisal services that complied with USPAP and other applicable state and federal statutes and regulations;

b.a. failing to provide appraisals and appraisal services that complied with standards applicable to the appraisal and appraisal industry; and

c. failing to provide appraisals and appraisal services that were prepared by Defendants with the experience and competence necessary to complete the assignment.

44. Defendants' actions in failing to comply with industry standards and applicable regulations and Maryland and Virginia law constitutes negligence for which Defendants are liable to SMI.

45. As a direct and proximate result of such negligence, SMI has suffered damages. Defendants appraised the Properties at a much higher value than the actual value of the Properties, causing loans to be originated by SMI secured by Properties whose true value was substantially less than the misrepresented value in the Appraisals and could not support adequate recovery to SMI once the Loans defaulted, resulting in substantial losses to SMI.

**SECOND CAUSE OF ACTION**
**(Gross Negligence)**

46. SMI restates and incorporates by reference the preceding paragraphs as though fully stated herein.

47. Defendants provided the Appraisals upon which this action is based and upon which the Loans were originated.

48. Defendants had a duty to use reasonable care in conducting the Appraisals of the Properties. This duty, among other things, required the Defendants to conduct the Appraisals in accordance with USPAP and other applicable regulations.

49. The actions of Defendants were negligent and breached this duty by:

34

a. intentionally failing to provide appraisals and appraisal services that complied with USPAP and other applicable state and federal statutes and regulations;

b. intentionally failing to provide appraisals and appraisal services that complied with standards applicable to the appraisal and appraisal industry; and

c. intentionally failing to provide appraisals and appraisal services that were prepared by Defendants with the experience and competence necessary to complete the assignment.

50. ~~Defendants' actions in failing to comply with industry standards and applicable regulations and Maryland and Virginia law, coupled with their actions to conceal this, constitutes gross negligence.~~

146. Defendants knew or should have known that their conduct would cause significant harm to SMI.

147. Defendants deliberately disregarded this known risk.

~~51.~~148. By their actions and omissions cumulatively considered, ~~Defendants~~ the Appraising Parties conducted the Appraisals in a grossly negligent manner and violated, among other USPAP rules, USPAP Standards Rule 1-1 by committing substantial errors of omission and commission that significantly and adversely affected the Appraisals.

52. ~~Within the scope of Defendants' undertaking appraising the Properties Defendants negligently made false representations of material fact regarding the value of the Properties in violation of their legal duties with knowledge that the Appraisals would be relied upon by SMI.~~

53. ~~SMI justifiably relied upon these false statements negligently made.~~

54. ~~Upon information and belief, Defendants' actions were done knowingly and intentionally, with the expressed intent to provide false and misleading valuations on the Properties with knowledge of the potential consequences of such actions and actively concealing them.~~

149.    Each Defendant who prepared, signed or issued an Appraisal Report, or employed the Appraiser who was responsible for preparing, signing or issuing an Appraisal Report, and/or each Defendant who executed a Letter of Engagement with regard to the Engagement, as identified *supra*, is liable for gross negligence.

150.    Defendants are vicariously liable for the gross negligence of their employees and/or agents, including Masters and the other appraisers who authored the Appraisal Reports.

~~55.~~151.    As a direct and proximate result of Defendants' scheme and gross negligence, SMI has suffered damages. ~~Defendants~~ The Properties were appraised ~~the Properties~~ at a much higher value than the actual value of the Properties, causing ~~l~~Loans to be originated by SMI secured by Properties whose true value was substantially less than the misrepresented value in the Appraisals and could not support adequate recovery to SMI once the Loans defaulted, resulting in substantial losses to SMI.

**~~THIRD CAUSE OF ACTION~~**
**(COUNT 4: Professional Negligence)**

~~56.1.SMI restates and incorporates by reference the preceding paragraphs as though fully stated herein.~~

**(Against All Defendants)**

152.    SMI restates and incorporates by reference the preceding paragraphs as though fully stated herein.

~~57.~~153.    The Engaging Parties agreed to perform, and the Appraising Parties performed and prepared, the Appraisals and provided information to SMI in connection with the Loans. The Appraisals were performed, prepared, and submitted to SMI for the purpose of facilitating the Loans.

36

58.154.    The Defendants'Appraising Parties' certifications attached to the Appraisals represent, among other things, that Defendantsthey performed full inspections of the Properties and performed the Appraisals in accordance with USPAP.

59.155.    In preparing the Appraisals, Defendants owed SMI a duty to act in accordance with the law and in accordance with custom, practices and standards of conduct prevailing in the industry.

60.156.    Defendants breached their duty to SMI inby negligently preparing Appraisals that contained numerous misrepresentations, failures and deficiencies, including, but not limited to: violations of USPAP, misrepresentations regarding material characteristics of the Properties and misrepresentations regarding the value of the Properties.

61.157.    In preparing the Appraisals, Defendantsthe Appraising Parties committed one or more of the following negligent acts and/or omissions:

a. The personal inspection of the Properties was grossly negligent.

b. The Appraisals reported millions of dollars in renovations to the Properties when personal inspections would have made it obvious that major renovations, if any, were not performed.

c. The Appraisals should not have used the extraordinary assumptions they did because their use was inconsistent with USPAP StandardStandards Rule 1-2(f) since: (i) the extraordinary assumption was not required to properly develop credible opinions and conclusions; (ii) the DefendantsAppraising Parties did not have a reasonable basis for the extraordinary assumption; and (iii) the use of the extraordinary assumption did not result in a credible analysis.

d. The extraordinary assumptions that renovations would be completed by a certain date were not reasonable, nor are the extraordinary assumptions that rent will commence per the owner's rent roll and timeframe.

e. The fraudulent rent rolls received from the bBorrower, which Defendantsthe Appraising Parties failed to take any steps to verify given the source, caused an overvaluation of the Properties using the income capitalization approach to determine value.

37

f. ~~Defendants~~The Appraising Parties inflated the Appraisals without support.

g. ~~Defendants~~The Appraising Parties failed to investigate and identify material misleading information that they should have uncovered during the required personal inspection of the Property, including minor cosmetic repairs being passed off as "gut renovations" and building conditions that could not support the rent rolls that were provided.

h. Upon information and belief, ~~Defendants~~the Appraising Parties personally inspected only a small number of units, ignored visible issues regarding those apartments and other visible issues with respect to the Properties, submitted inaccurate photographs, and overlooked incomplete renovations.

i. ~~Defendants~~The Appraising Parties uncritically accepted as true the ~~b~~Borrowers' representations that millions of dollars in renovations had been made to the Properties, but personal inspections of certain buildings made after the Appraisals were completed do not support those representations.

j. The comparable property data used to support the Appraisals often consisted of data regarding other Chasen-owned properties, or other properties that were significantly better than the subject Property.

k. ~~Defendants~~The Appraising Parties failed to clearly and accurately set forth the Appraisals in a manner that was not misleading.

l. Defendants failed to comply with their obligations to complete full appraisals.

m. ~~Defendants~~The Appraising Parties failed to correctly employ recognized methods and techniques to produce a credible appraisal. Thus, ~~Defendants~~the Appraising Parties did not employ recognized methods and techniques in violation of USPAP ~~Rule~~ Standards 1-1 and 1-4.

~~62.~~158.    SMI justifiably relied on the representations made by Defendants in the Engagements and Appraisals, including valuations, performed by certified, licensed appraisers, ~~including valuations,~~ in deciding to ~~fund~~originate the Loans secured by the Properties. SMI reasonably believed that the information submitted by ~~Defendants'~~Defendants—touted experts— was true and had been reviewed in accordance with USPAP, applicable law, and other industry standards prevalent in the appraisal industry.

159.    Each Defendant who prepared, signed or issued an Appraisal Report, or employed the Appraiser who was responsible for preparing, signing or issuing an Appraisal Report, and/or each Engaging Party who executed a Letter of Engagement with regard to the Engagement, as identified *supra*, is liable for professional negligence.

160.    Defendants are vicariously liable for the professional negligence of their employees and/or agents, including Masters and the other appraisers who authored the Appraisal Reports.

63.161.    As a direct and proximate result of Defendants' professional negligence, SMI has suffered damages. Defendants appraised the Properties at a much higher value than the actual value of the Properties, causing loans to be originated by SMI secured by Properties whose true value was substantially less than the misrepresented value in the Appraisals and could not support adequate recovery to SMI once the Loans defaulted, resulting in substantial losses to SMI.

**Count 5: Negligence**
**(Against All Defendants)**

162.    SMI restates and incorporates by reference the preceding paragraphs as though fully stated herein.

**FOURTH CAUSE OF ACTION**
**(Vicarious Liability/Respondeat Superior)**

64.1.SMI restates and incorporates by reference the preceding paragraphs as though fully stated herein.

163.    Defendants had a duty to use reasonable care in conducting the Appraisals. This duty, among other things, required Defendants to conduct the Appraisals in accordance with USPAP and other applicable regulations.

164.    Defendants breached the applicable standards of care by improperly valuing the subject properties.

39

165.    The actions of Defendants were negligent and Defendants breached this duty by:

a.   failing to provide appraisals and appraisal services that complied with USPAP and other applicable state and federal statutes and regulations;

b.   failing to provide appraisals and appraisal services that complied with standards applicable to the appraisal and appraisal industry; and

65.    Upon information and belief, at all times relevant to this action, Masters was employed by Cushman, and was acting within the course and scope of his employment.

66.    Defendants appraised the Properties at a much higher value than the actual value of the Properties, causing loans to be originated by SMI secured by Properties whose true value was substantially less than the misrepresented value in the Appraisals and could not support adequate recovery to SMI once the Loans defaulted, resulting in substantial losses to SMI.

c.   Cushman isfailing to provide appraisals and appraisal services that were prepared by the Appraising Parties with the experience and competence necessary to complete the assignment.

166.    Each Defendant who prepared, signed or issued an Appraisal Report, or employed the Appraiser who was responsible for preparing, signing or issuing an Appraisal Report, and/or each Engaging Party who executed a Letter of Engagement with regard to the Engagement, as identified *supra*, is liable for negligence.

167.    Defendants are vicariously liable for the unlawful actionsnegligence of itstheir employees and/or agents, including Masters and the other appraisers who authored the Appraisal Reports.

168.    As a direct and proximate result of Defendants' negligence, SMI has suffered damages. Defendants appraised the Properties at a much higher value than the actual value of the Properties, causing loans to be originated by SMI secured by Properties whose true value was

substantially less than the misrepresented value in the Appraisals and could not support adequate recovery to SMI once the Loans defaulted, resulting in substantial losses to SMI.

### COUNT 6: Fraud in the Inducement
### (Against All Defendants)

169.    SMI restates and incorporates by reference the preceding paragraphs as alleged in this Complaint. As a result, Cushman is liable for SMI's damages as set forththough fully stated herein.

### FIFTH CAUSE OF ACTION
### (Negligent Misrepresentation)

SMI restates and incorporates by reference the preceding paragraphs as though fully stated herein.

Defendants performed and prepared the Appraisals for SMI in connection with the Loans. The Appraisals were performed, prepared, and submitted to SMI for the purpose of originating the Loans.

170.    The Appraisals contained numerousRather than following USPAP, and contrary to the concepts of good faith and fair dealing, the Appraising Parties deliberately used false data and other misinformation to support artificially inflated Property values. The resulting values supported Chasen's request for a loan of a certain amount. Had the appraised value been lower than the value necessary to support originating a loan in the requested amount, SMI would not have originated a loan in the amount requested. The purpose behind the grossly inflated values was to induce SMI to issue the Loans with a substantially higher original principal balance than it would have had it known the accurate value.

171.    In originating the Loans in an amount requested by Chasen, SMI relied upon the Appraising Parties representations and assurances regarding the quality of the collateral underlying

the Loans, such as their representations and assurances that the Properties were in good condition and renovations had been made.

70. But for the misrepresentations, including falsely representing the value of the Properties and falsely representing that omissions in the Appraisals was prepared in conformity with USPAP.

71.172. At the time Defendants prepared the Appraisals, they had no reasonable basis for believing the representations were true and knew or should, SMI would not have known the representations were false. Theoriginated the Loans as it ultimately did, because those representations and omissions and the Appraisals themselves were material to SMI'sits decision to originate the Loans, and Defendants intended for SMI to rely on the representations made in the Appraisals for purposes of originating mortgage loans.

72.1.SMI justifiably relied on the representations made by Defendants in the Appraisals in deciding to originate the Loans secured by the Properties. SMI reasonably believed that the information submitted by Defendants was true and had been reviewed in accordance with USPAP and other industry standards prevalent in the appraisal industry.

173. Each respective Defendant made false statements or representations of material facts as described above, including but not limited to the intent to follow USPAP, or otherwise perform legitimate appraisals upon which SMI would rely.

174. Each respective Defendant had no intention of performing the Appraisals as promised at the time of executing the Engagement Letters.

175. Each respective Defendant knew these statements or representations were false when made or made them with reckless indifference as to whether they were true or false.

42

Formatted: Bullets and Numbering

Formatted: Font: +Body (Aptos)

176. Each respective Defendant made these misrepresentations for the purpose of defrauding SMI and inducing SMI into entering the Engagements.

177. Each respective Defendant made these misrepresentations with a specific evil intent or ill will to harm SMI.

178. SMI justifiably relied on Defendants' misrepresentations.

179. Each Defendant who prepared, signed or issued an Appraisal Report, or employed the Appraiser who was responsible for preparing, signing or issuing an Appraisal Report, and/or each Engaging Party who executed a Letter of Engagement with regard to the Engagement, as identified *supra*, is liable for fraud in the inducement.

180. Defendants are vicariously liable for the misrepresentations made by their employee and/or agents, including Masters and the other appraisers who authored the Appraisal Reports.

181. This failure permeated and voided the Engagements in their entirety. Because a fraudulently-induced contract is invalid from inception, none of the provisions therein, including the limitations provisions, is enforceable.

182. Had SMI known of Defendants' scheme and/or malintent, and but-for the fraudulent and false statements made by each Defendant, it would not have entered into the engagement or executed the Engagement Letters and they are void ab initio.

183. SMI has suffered actual, direct damages and/or loss as a result of its reliance on Defendants' misrepresentations.

73. **COUNT 7:** As a direct and proximate result of Defendants' material misrepresentations, SMI has suffered damages. Defendants appraised the Properties at a much higher value than the actual value of the Properties, causing loans to be originated by SMI secured

by Properties whose true value was substantially less than the misrepresented value in the Appraisals and could not support adequate recovery to SMI once the Loans defaulted, resulting in substantial losses to SMI.

**SIXTH CAUSE OF ACTION**
**(Breach of Contract)**

74.1.SMI restates and incorporates by reference the preceding paragraphs as though fully stated herein.

**(Against All Defendants)**

184.    SMI restates and incorporates by reference the preceding paragraphs as though fully stated herein.

75.185.    SMI entered into the ContractsEngagements with Defendantsthe Engaging Parties to prepare and furnish appraisals which assessed the value of the Properties based upon accurate facts and reasonable assumptions, and were performed in a professionally competent manner.

76.186.    Failure to follow USPAP's requirements in and of itself states a cause of action for breach of contract. This failure permeated and voided the ContractsEngagements in their entirety. Because a void contract is invalid from inception, none of the provisions therein, including the limitations provisions, is enforceable.

77.187.    Defendants breached the ContractsEngagements by preparing and furnishing Appraisals which grossly overvalued the value of the Properties and misstating significant facts.

188.    Each Defendant who prepared, signed or issued an Appraisal Report, or employed the Appraiser who was responsible for preparing, signing or issuing an Appraisal Report, and/or

44

each Engaging Party who executed a Letter of Engagement with regard to the Engagement, as identified *supra*, is liable for breach of contract.

78.189.        As a result of Defendants' breach of contract, SMI has suffered damages. Defendants appraised the Properties at a much higher value than the actual value of the Properties, causing loans to be originated by SMI secured by Properties whose true value was substantially less than the misrepresented value in the Appraisals and could not support adequate recovery to SMI once the Loans defaulted, resulting in substantial losses to SMI.

**Formatted:** Bullets and Numbering

## PRAYER FOR RELIEF

WHEREFORE, SMI demands judgment against Defendants:

a) Determining that the Contracts are void;

a) Determining that the Engagement Letters and their provisions are void and not binding on SMI, and the Engagement was an oral engagement that should have been performed in accordance with usual standards of performing an appraisal in accordance with USPAP;

b) Damages, including expenses, consequential damages and punitive damages, unlimited by the terms of the fraudulently induced Engagement Letters;

b)c)        An award of damages in favor of SMI against Defendants, jointly and severally, for all damages sustained as a result of Defendants' actions, in an amount to be proven at trial, but including at a minimumbut not limited to:

i.    SMI's monetary losses, in an amount to be determined, including losses resulting from originating loans based on misleading Appraisals that misrepresented the Properties' values to be much higher than their actual values and could not support adequate recovery to SMI once the Loans defaulted, including appraisal costs;

ii.   Attorneys' fees and costs;

iii.    Prejudgment interest at the maximum legal rate; and

iv.    Such other and further relief as the Court may deem just and proper.

Dated: ~~January 23~~ March 20, 2026 ~~Respectfully submitted,~~

> ~~/s/John M. Murdock~~
> ~~John M. Murdock, Esq. (FedBar #27848)~~
> ~~(703) 992-6950~~
> ~~jmurdock@pottermurdock.com~~
> ~~POTTER & MURDOCK, P.C.~~
> ~~252 N. Washington Street~~
> ~~Falls Church, VA  22046~~
> ~~*Attorneys for Plaintiff*~~
> ~~*StanCorp Mortgage Investors, LLC*~~

> Respectfully submitted,
>
> **D'ARCAMBAL QUESADA MALYK PETERS & CREED LLP**
>
> */s/Michelle J. d'Arcambal*
> Michelle J. d'Arcambal
> Tiffany C. Millioen
> *Admitted pro hac vice*
> 40 Fulton Street, Suite 1501
> New York, NY 10038
> Phone: (212) 971-3175
> Fax: (212) 971-3176
>
> **POTTER & MURDOCK, P.C.**
>
> */s/John M. Murdock*
> John M. Murdock, Esq. (FedBar #27848)
> (703) 992-6950
> jmurdock@pottermurdock.com
> 252 N. Washington Street
> Falls Church, VA 22046
>
> *Attorneys for Plaintiff*
> *StanCorp Mortgage Investors, LLC*

**Formatted:** Space After:  0 pt, Line spacing:  single

46